UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-4242-LSS

UNITED STATES OF AMERICA,

VS.

ORLANDO JANSEN,

Defendant.
_____/

## DETENTION ORDER

THIS MATTER came before the Court upon the Government's motion to detain the defendant, **Orlando Jansen**, prior to trial and until the conclusion thereof. Having received evidence and heard argument of counsel, the Court hereby GRANTS the motion and enters its written findings of fact and statement of reasons for the detention in accordance with the provisions of 18 U.S.C. § 3142(i).

A.  INTRODUCTION

On October 25, 2000, the Court held a hearing to determine whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of any person and the community. 18 U.S.C. § 3142(f). Based upon the evidence presented, the Court finds probable cause that the defendant, **Orlando Jansen**, committed an offense for which a maximum term of imprisonment of ten



(10) years or more is prescribed in the Controlled Substances Act, 21 U.S.C. § 801 et seq. This finding gives rise to a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e). Assuming, arguendo, that the defendant has come forward with sufficient evidence to rebut the statutory presumption, the presumption "remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence." United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990); United States v. King, 849 F.2d 485, 488 (11th Cir. 1988). Throughout this proceeding, the burden of persuasion is upon the Government to establish by the "preponderance of the evidence" that the defendant poses a risk of flight and/or by "clear and convincing evidence" that he poses a danger to the community. Id. at 489; 18 U.S.C. § 3142(f). In determining whether the Government has met its burden by the requisite standard of proof, this Court must take into account the factors enumerated in 18 U.S.C. § 3142(g).

B.   FINDINGS OF FACT

1.   The defendant is charged with conspiracy to distribute a quantity of 4-methyl-2, 5-dimethoxyamphetamine (commonly know as MDMA or Ecstasy), in violation of 21 U.S.C. §§ 841(a) and 846. Therefore, the defendant is charged with a crime involving a narcotic drug. 18 U.S.C. § 3142(g)(1).

2.   The Court received credible evidence that the defendant committed the offense with which he has been charged. In or about early October 2000, a confidential

source ("CS")[1] contacted the Palm Beach County Sheriff's Office to advise that he had received a telephone call from a Dutch citizen named **Orlando Jansen**. **Jansen** stated that he would be arriving at Miami International Airport from The Netherlands on October 17, 2000. **Jansen** reportedly told the CS that approximately 400,000 tablets of MDMA or Ecstasy had previously been shipped to South Florida, that there was work to be done, and that he looked forward to working with the CS. **Jansen** also informed the CS that an individual known as Oswaldo would also be arriving in the Untied States on another flight and would be assisting **Jansen** in selling the MDMA. Finally, **Jansen** agreed to front the CS approximately 50,000 tablets of MDMA, and if the CS were able to distribute these tablets quickly, he would front another 50,000 tablets.

On October 17, 2000, the CS picked up **Jansen** at the Miami International Airport. The two then drove to a Miami Beach hotel, during which drive the CS tape recorded his conversations with **Jansen** concerning the upcoming MDMA deal. When the two arrived at the Miami Beach hotel, the CS parked the car directly across the street. **Jansen** told the CS that his friends were staying at the hotel and that he would check to see whether they were there; the CS joined **Jansen** in the hotel. Shortly thereafter, agents observed the CS and **Jansen** meet with several individuals, later identified as Eugene Mierak, Oswaldo Renfrum, Marcell Verschuren, and Eyob Michel. The CS informed law enforcement officers that the group had discussed the MDMA transaction that was being planned. **Jansen** spoke in English to the CS, but he spoke Dutch to Mierak, Renfrum,

---

[1] The CS had been arrested on an MDMA charge earlier in 2000 and was cooperating with law enforcement to obtain a more lenient sentence in his drug case.

3

Verschuren, and Michel. Although the CS does not speak Dutch, in later conversations Mierak and Renfrum spoke in English to the CS about the MDMA deal.

Following the meeting, **Jansen** and the CS entered the CS's vehicle and travelled to a hotel in Coconut Grove; law enforcement officers surveilled. **Jansen** rented a room at the hotel. He also directed the CS to rent a car and deliver it to him at the hotel. The CS informed law enforcement officers that he had previously conducted business in this fashion with **Jansen** and his associates and that on that prior occasion **Jansen** had provided the CS with approximately 120,000 tablets of MDMA.

On October 18, 2000, law enforcement officers observed the CS as he delivered the rental vehicle to **Jansen** as directed. Law enforcement also surveilled **Jansen** as he drove the rental vehicle to a parking lot in Miami Beach; he was followed by the CS, who was driving his own vehicle. The two parked their respective vehicles and walked to a nearby hotel, where agents observed the CS meet with Renfrum and **Jansen**. The CS informed agents that the three would be traveling to Fort Lauderdale to meet the individual who controlled the release of the MDMA pills. That person was identified as Mierak.

Agents followed **Jansen** and Renfrum in the rental vehicle, as well as the CS in his own vehicle, to the Holiday Inn Express on North Federal Highway in Fort Lauderdale. There they observed **Jansen**, Renfrum, and the CS meet with Mierak. According to the CS, the four made plans to execute the first transaction involving 50,000 MDMA tablets. Mierak told the CS that the owners of the pills were inside the Pure Platinum. DEA agents observed Mierak go inside the Pure Platinum and meet with Verschuren and two other males. Mierak then exited the Pure Platinum and told the CS that the owners would not

4

front the pills to the CS; the CS first had to deliver $50,000 to obtain possession of the 50,000 MDMA tablets.

On October 19, 2000, **Jansen** and Renfrum drove the rental vehicle to the Holiday Inn Express in Fort Lauderdale, eventually parking it at a Publix across the street. Mierak was in the Publix parking lot where he could keep the rental vehicle under surveillance. **Jansen** met with the CS, and the two proceeded to the rental vehicle. **Jansen** then gave the CS the keys to the rental vehicle and told him that the pills were in the trunk. The CS opened the trunk and observed a black and red bag containing what was later determined to be approximately 50,000 MDMA tablets. **Jansen** asked where the money was, and the CS stated that his associate had the money at a nearby location. **Jansen** then walked back to the Holiday Inn Express.

The CS later received telephone calls on his cellular telephone from **Jansen**, Renfrum, and Mierak; all three men demanded the money for the MDMA tablets. DEA agents then arrested Mierak in front of the Publix, and they arrested **Jansen**, Renfrum, and Verschuren at the Holiday Inn Express where they had been observed meeting during the drug negotiations. DEA agents also seized the MDMA tablets. Based upon the packaging and odor of the tablets, the case agent opined that the tablets were, in fact, MDMA.

In a post-arrest statement, **Jansen** told agents that his job was only to bring back $65,000 to The Netherlands and to deliver the money to an undetermined location; in return, he was to be paid $7,500.

In a separate post-arrest statement, Renfrum told agents that Verschuren and Mierak travelled together and that they were both associated with the individuals in The

5

Netherlands to whom the proceeds were to be delivered. Renfrum told agents that Mierak had approached him and offered to pay his travel expenses to Miami. Renfrum was to return to The Netherlands with $75,000; in exchange, he was to be paid $7,500. 18 U.S.C. § 3142(g)(2).

3.  The pertinent history and characteristics of the defendant are significant to this Court's assessment of his candidacy for bond. The defendant was born in The Netherlands, Antilles, and he has been residing for the past several years in The Netherlands.

The defendant advised that he is single and has no children. His parents and two siblings all reside in Curacao.

The defendant reports that he has been unemployed for the past two years. Accordingly, he indicates that he has no assets of significant value. 18 U.S.C. § 3142 (g)(3)(A) and (B).

4.  The Court received evidence concerning the nature and seriousness of the danger to the community that would be posed by the release of this defendant. The defendant had previously delivered 120,000 MDMA tablets to the CS. In this case, the defendant helped orchestrate the delivery to the CS of 50,000 MDMA tablets, part of a larger 400,000 tablet shipment. 18 U.S.C. § 3142(g)(4).

5.  The Court specifically finds by the preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance at trial. 18 U.S.C. § 3142(e).

6.  The Court specifically finds by clear and convincing evidence that no

6

condition or combination of conditions of release will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(e).

C.   STATEMENT OF REASONS FOR DETENTION

1.   Based upon the above findings of fact, this Court concludes that the release of this defendant on bond prior to trial would present an unreasonable risk of flight. The defendant is a Dutch citizen and resident who had been in the United States only a short time when he was arrested. Moreover, the defendant is without any legitimate ties - financial or emotional - to the United States. Given the period of incarceration he would face upon conviction, coupled with the absence of any legitimate ties to this country, the undersigned does not believe that he would be likely to appear if released on bond prior to trial.

2.   Based upon the above findings of fact, this Court concludes that the release of this defendant on bond prior to trial would present an unreasonable danger to persons and to the community. The defendant was intimately involved in a conspiracy to distribute 50,000 MDMA tablets. Furthermore, the CS advised that this defendant had previously delivered to him approximately 120,000 MDMA tablets. Accordingly, the defendant's actions in this conspiracy appear to be part of a larger pattern of narcotics trafficking.

D.   DISPOSITION

Being fully advised, the Court hereby ORDERS that the defendant, **Orlando Jansen**, be detained prior to trial and until the conclusion thereof.

The Court further DIRECTS

1.   That the defendant be committed to the custody of the Attorney General for

confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That the defendant be afforded reasonable opportunity for private consultation with counsel; and

3. That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida this 27th day of October 2000.

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

Copies to:

William Norris, Esquire
3225 Aviation Avenue, Suite 300
Coconut Grove, Florida 33133-4741
Attorney for Defendant

Jeffrey Kay, Esquire
Assistant United States Attorney

United States Marshal

United States Pretrial Services

8